**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FMC CORPORATION, | |
| *Plaintiff*, | |
| v. | Case No. 24-cv-2419-MRP |
| SHARDA USA LLC, | |
| *Defendant*. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL STANDARDS ............................................................................................. 1

III.  ARGUMENT ............................................................................................................ 3

    A.    FMC Cannot Establish Likelihood Of Success On The Merits
        Because The Patents-in-Suit Are Invalid As Anticipated By The
        Prior Art ........................................................................................................... 3

        1.    *McKenzie* anticipates the Asserted Claims .................................. 4

        2.    FMC knows or should have known that the Asserted
                Claims are Invalid ....................................................................... 7

    B.    FMC Fails To Demonstrate Irreparable Harm ...................................... 10

    C.    The Balance Of Equities Favors The Denial Of A Preliminary
        Injunction ..................................................................................................... 15

    D.    The Public Interest Favors The Denial Of The Preliminary
        Injunction ..................................................................................................... 15

IV.   CONCLUSION ....................................................................................................... 16

## I.    INTRODUCTION

Plaintiff FMC Corporation ("FMC") moves for a temporary restraining order and preliminary injunction enjoining Defendant Sharda USA LLC ("Sharda") from importing, marketing, and selling its WINNER insecticide or any premixed insecticide comprising a combination of bifenthrin and a cyano-pyrethroid in a ratio between about 10:1 to about 1:100 until this litigation is resolved. (Dkt. 4). FMC's Motion should be denied because FMC has failed to meet its burden of showing that it is entitled to a preliminary injunction.  Critically, FMC seeks this extraordinary relief based on patents that are invalid in view of prior art that predated the filing date of these patents by years, including a 1996 publication that disclosed the claimed combination that was co-authored by a then-FMC employee. FMC's assertion of invalid patent claims and its reliance on mere speculation rather than evidence-based support demonstrate its failure to show likelihood of success on the merits and irreparable harm—both requirements for a preliminary injunction to issue. Further, the lack of actual evidence regarding the two remaining factors—the balance of equities and the public interest—also undermine FMC's requested injunctive relief.

## II.    LEGAL STANDARDS

"A preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (internal quotations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). A patent holder seeking a preliminary injunction must establish that "(1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest." *Biomedical Device Consultants & Labs of Colo., LLC v. Vivitro Labs, Inc.*, No. 2023-2393, 2024 WL 1318251, at *3 (Fed. Cir. Mar. 28, 2024)

(internal quotations omitted). "[A] movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

Specifically, the movant bears the ultimate burden of establishing a likelihood of success on the merits with respect to both infringement and validity of the patents-in-suit. *See id*. "If the alleged infringer raises a substantial question of validity, the preliminary injunction should not issue." *Id.* at 1005-06; *see also Biomedical Device Consultants*, 2024 WL 1318251, at *3 (affirming district court's denial of a preliminary injunction without considering infringement because the alleged infringer established a substantial question of validity).

The burden on the accused infringer to show a substantial question of invalidity at the preliminary injunction stage is lower than the burden required to prove invalidity at trial. *Altana*, 566 F.3d at 1005. The question at the preliminary injunction stage is one of "vulnerability," which "requires less proof than the clear and convincing showing necessary to establish invalidity itself." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358 (Fed. Cir. 2001). Once the accused infringer raises a substantial question of invalidity, the patentee cannot merely rely on the presumption of validity to defeat the challenge. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). Rather, "the burden shifts to the patentee to show that the defense lacks substantial merit." *Altana*, 566 F.3d at 1006. "Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue." *Titan Tire*, 566 F.3d at 1377.

In addition, the moving party must make a "clear showing" that it is likely to suffer irreparable harm absent a preliminary injunction. *Winter*, 555 U.S. at 22. To satisfy the irreparable

harm factor, the moving party must establish irreparable harm absent a preliminary injunction and the existence of a causal connection between the harm and alleged infringement. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). The irreparable harm caused to the moving party must "consist[] of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008). Any alleged irreparable harm must be immediate in the absence of the preliminary injunction—the "mere possibility or speculation of an irreparable harm is insufficient." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). The moving party must also support its assertion of irreparable harm with evidence demonstrating the existence of the harm—bare claims of irreparable harm are insufficient. *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020).

## III.    ARGUMENT

### A.    FMC Cannot Establish Likelihood Of Success On The Merits Because The Patents-in-Suit Are Invalid As Anticipated By The Prior Art

FMC's motion for a temporary restraining order and preliminary injunction should be denied because the patents-in-suit are invalid in light of the prior art, including a research study involving FMC products and whose lead author was an FMC research biologist that was published in 1996, nearly a decade before the effective filing date of the patents-in-suit. (Ex. C, *See* McKenzie et al., *Field & Greenhouse Performance of Mustang 1.5 EW and Capture 2EC on Immature and Adult Whitefly*, Proceedings of the Beltway Cotton Conference, Volume 2:810-816 (1996) ("*McKenzie*")). As explained in detail below, *McKenzie* discloses a composition that is encompassed by the asserted claims of the patents-in-suit and therefore renders the patent claims invalid. At a minimum, Sharda has raised substantial questions as to the validity of the patents-in-

suit, and thus the preliminary injunction should not issue because FMC cannot establish that it is likely to succeed on the merits. *See Altana*, 566 F.3d at 1005.

In its complaint, FMC accuses Sharda of infringing claims 1-3 and 6 of U.S. Patent No. 9,596,857 ("the '857 patent") and claims 1, 2, 4-14, and 16 of U.S. Patent No. 9,107,416 ("the '416 patent") (collectively, "the Asserted Claims"). Generally, the Asserted Claims are directed to insecticidal and/or miticidal compositions that include at least two active ingredients: 1) bifenthrin and 2) a cyano-pyrethroid (including zeta-cypermethrin), at specified ranges of these active ingredients, as well as methods of using such compositions. Claim 1 of the '857 patent is exemplary:

> An insecticidal composition comprising bifenthrin and a cyano-pyrethroid selected from the group consisting of acrinathrin, cycloprothrin, deltamethrin, tralomethrin, fenvalerate, cyfluthrin, beta-cyfluthrin, flucythrinate, alpha-cypermethrin, beta-cypermethrin, theta-cypermethrin, zeta-cypermethrin, cyphenothrin, cyhalothrin, lambda-cyhalothrin, esfenvalerate, fluvalinate and fenpropathrin, wherein the composition has a ratio of bifenthrin:cyano-pyrethroid of from about 10:1 to about 1:100.

('857 patent at 13:41-49).

### 1.    *McKenzie* anticipates the Asserted Claims

Here, the Asserted Claims are invalid as anticipated by *McKenzie*. An invention is invalid as anticipated if it was "…described in a printed publication in this…country…more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b) (pre-AIA). To anticipate a claim, the printed publication must set forth each and every element in the claim, either expressly or inherently. *See Arbutus Biopharma Corp. v. ModernaTX, Inc.*, 65 F.4th 656, 662 (Fed. Cir. 2023).

First, *McKenzie* is prior art to the Asserted Claims under 35 U.S.C. § 102(b) because it was published in 1996, which is more than one year prior to the earliest claimed priority date of the patents-in-suit, *i.e.*, December 22, 2005, the filing date of Provisional Application No. 60/752,979.

(Ex. C at 810). Second, *McKenzie* anticipates the Asserted Claims because it discloses insecticidal/miticidal compositions comprising at least bifenthrin and zeta-cypermethrin at a ratio that is within the narrowest range of the Asserted Claims as well as the remaining limitations of the Asserted Claims. (*Id.* at 811, 815-817, Tables 8-10; *see also* Ex. A, Declaration of David A. Hunt at ¶¶ 32-138).

In particular, *McKenzie* describes the set-up and results of small plot field trials conducted in 1995 "to compare efficacy of rotating nonpyrethroid and pyrethroid insecticide combinations with continuous pyrethroid insecticide treatment regimes." (Ex. C at Abstract). Among the pyrethroid insecticides tested in the research study described in *McKenzie* were two well-known FMC compositions: Mustang 1.5 EW and Capture 2EC. (*Id.* at Abstract, 813, 815-817). Mustang 1.5 EW is an FMC insecticide with zeta-cypermethrin as its active ingredient. (*See* Ex. H, May 1998 USDA Report at 95; Ex. E, Mustang 2001 label at 4; Ex. A at ¶¶ 42-45). Capture 2EC is an FMC insecticide/miticide that contains bifenthrin as its active ingredient. (*See* Ex. D, 1994 Capture Label at 4; Ex. A at ¶ 40).

As part of the study described in *McKenzie*, various insecticide treatments were applied to small plot fields seeded with cotton plants. (Ex. C at 811). The "insecticide treatments consisted of nonpyrethroid combinations rotated with pyrethroid combinations or ***continuous applications of two [or] more tankmix partners***." (*Id.* (emphasis added)). *McKenzie* includes tables that identify the insecticides that were combined together as tankmix partners. Among the continuous applications of two or more tankmix partners was a composition that includes Capture 2EC and Mustang 1.5 EW, as highlighted below:

Table 8. Efficacy of insecticide treatments for control of whitefly eggs on cotton, 1995.

| Treatment | Rate lb (AI)/ac | # WF eggs / 10 cm² leaf disc (% Control) | | |
|---|---|---|---|---|
| | | 18 July | 7 Aug | 16 Aug |
| Thiodan + Ovasyn[a] / Mustang + Orthene | 0.75 + 0.25 / 0.045 + 0.50 | 70.6 ab (24.3) | 108.8 b (55.6) | 238.4 b (66.5) |
| Thiodan + Curacron[a] / Capture + Vydate | 0.75 + 0.75 / 0.08 + 0.50 | 76.4 ab (18.0) | 119.0 ab (51.4) | 252.0 b (64.6) |
| Thiodan + Vydate[a] / Mustang + Curacron | 0.75 + 0.50 / 0.045 + 0.50 | 48.8 b (47.6) | 63.6 b (74.0) | 168.2 b (76.4) |
| Thiodan + Ovasyn[a] / Mustang + Monitor | 0.75 + 0.25 / 0.045 + 0.50 | 95.6 a (2.6) | 124.0 ab (49.4) | 277.0 b (61.1) |
| Thiodan + Penncap-M[a] / Mustang + Ovasyn | 0.75 + 0.50 / 0.045 + 0.25 | 69.6 ab (25.3) | 60.6 b (75.3) | 106.8 b (85.0) |
| Orthene + Mustang + Capture | 0.50 + 0.045 + 0.031 | 60.8 ab (34.8) | 101.2 b (58.7) | 140.2 b (80.3) |
| Orthene + Mustang + Danitol | 0.50 + 0.045 + 0.031 | 69.0 ab (26.0) | 49.2 b (79.9) | 47.6 b (93.3) |
| Capture + Curacron | 0.08 + 0.50 | 55.8 b (40.1) | 73.2 b (70.1) | 40.8 b (94.3) |
| Capture + Monitor | 0.08 + 0.50 | 79.6 ab (14.6) | 48.6 b (80.2) | 43.0 b (94.0) |
| Untreated | ---------- | 93.2 a | 245.0 a | 711.6 a |

Table 8. (cont'd).

| Treatment | Rate lb (AI)/ac | # of WF eggs / 10 cm² leaf disc (% Control) | | | Season X (% Ctrl) |
|---|---|---|---|---|---|
| | | 22 Aug | 30 Aug | 7 Sept | |
| Thiodan + Ovasyn[a] / Mustang + Orthene | 0.75 + 0.25 / 0.045 + 0.50 | 5.0 b (93.8) | 50.4 b (86.7) | 29.2 b (91.3) | 93.7 (70) |
| Thiodan + Curacron[a] / Capture + Vydate | 0.75 + 0.75 / 0.08 + 0.50 | 131.6 b (87.4) | 71.8 b (81.1) | 37.2 b (88.9) | 114.7 (65) |
| Thiodan + Vydate[a] / Mustang + Curacron | 0.75 + 0.50 / 0.045 + 0.50 | 95.0 b (90.9) | 60.0 b (84.2) | 70.4 b (79.1) | 84.3 (75) |
| Thiodan + Ovasyn[a] / Mustang + Monitor | 0.75 + 0.25 / 0.045 + 0.50 | 127.6 b (87.8) | 64.0 b (83.1) | 55.8 b (83.4) | 124.0 (60) |
| Thiodan + Penncap-M[a] / Mustang + Ovasyn | 0.75 + 0.50 / 0.045 + 0.25 | 66.2 b (93.7) | 74.2 b (80.4) | 25.8 b (92.3) | 67.2 (75) |
| Orthene + Mustang + Capture | 0.50 + 0.045 + 0.031 | 52.4 b (95.0) | 25.4 b (93.3) | 4.8 b (92.6) | 67.5 (86) |
| Orthene + Mustang + Danitol | 0.50 + 0.045 + 0.031 | 33.8 b (96.8) | 26.8 b (92.9) | 18.6 b (94.5) | 40.8 (91) |
| Capture + Curacron | 0.08 + 0.50 | 45.6 b (95.6) | 73.0 b (80.8) | 11.4 b (96.6) | 49.9 (89) |
| Capture + Monitor | 0.08 + 0.50 | 30.6 b (97.1) | 26.6 b (93.0) | 14.2 b (95.8) | 40.4 (91) |
| Untreated | ---------- | 1044.6 a | 379.2 a | 336.0 a | 468.3 |

(Ex. C at 815; *see also id* at 815-817, Tables 9 and 10) (annotated with yellow highlight). The highlighted composition disclosed above uses Capture and Mustang at a (AI)/ac ratio[1] of 0.031 to 0.045, which is mathematically equivalent to a ratio of 1:1.45. (Ex. A at ¶¶ 47-49).

Thus, *McKenzie* discloses an insecticidal composition that includes bifenthrin (i.e., Capture insecticide) and zeta-cypermethrin (i.e., Mustang insecticide), wherein the composition has a ratio of bifenthrin to zeta-cypermethrin is from about 10:1 to about 1:100 (i.e., 1:1.45). (*See* Ex. A at ¶¶ 34-50). The EPA approved pesticide product labels for FMC's Capture and Mustang products that describe their active ingredients confirm that one skilled in the art would recognize that *McKenzie* discloses such an insecticidal composition. *See Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1340 (Fed. Cir. 2020) ("Anticipation is established when one skilled in the art would reasonably

---

[1] "AI" stands for active ingredient and "ac" stands for acre. (Ex. A at ¶ 48.) (AI)/ac denotes the amount of active ingredient that is disbursed per acre. (*Id*.). When two or more active ingredients are used in a tankmix composition, the ratio of active ingredients can be compared by dividing the (AI)/ac ratio for one active ingredient by the other. (*Id.*)

understand or infer from the prior art reference's teaching that every claim [limitation] was disclosed in that single reference."). Indeed, there can be no doubt that bifenthrin and zeta-cypermethrin are two active ingredients necessarily present in the composition using Capture and Mustang as taught by *McKenzie*. (*See* Ex. A at ¶¶ 38-46). Therefore, *McKenzie* anticipates claim 1 of the '857 patent because it discloses a composition that meets each limitation of the claim. (*See* Ex. J, '857 patent claim chart; *see also Arbutus Biopharma*, 65 F.4th at 666 ("When a patent claims a chemical composition in terms of ranges and a single prior art reference discloses a composition that falls within each of the ranges, the range is anticipated.").). As shown in the contemporaneously filed claim charts and as described in the declaration of David A. Hunt, *McKenzie* likewise anticipates each of the other Asserted Claims. (*See* Exs. J and K, '857 and '416 patent claim charts; Ex. A at ¶¶ 51-138.)

Because Sharda has established a substantial question of validity of the Asserted Claims that does not lack substantial merit, FMC will not be able to establish a likelihood of success on the merits and the Court should deny FMC's motion. *See Altana*, 566 F.3d at 1005 (affirming denial of a motion for preliminary injunction because the patentee failed to establish a likelihood of success on the merits as to patent validity); *Biomedical Device Consultants*, 2024 WL 1318251, at *6 (affirming denial of preliminary injunction motion because the patentee's arguments failed to demonstrate that the accused infringer's invalidity defense lacked substantial merit).

## 2.    FMC knows or should have known that the Asserted Claims are Invalid

As noted above, the lead author of *McKenzie* is C.L. McKenzie who is identified as a "Research Biologist South / West Region, FMC Corporation, Yuma, AZ." (Ex. C at 1.) *McKenzie* published in 1996, which is squarely within the time period when Ms. McKenzie was employed

by FMC as corroborated by her LinkedIn profile.[2] The fact that she is identified as an FMC employee on the face of the article and her responsibilities while at FMC according to her LinkedIn biography suggest that she conducted the trials discussed in the article, including the composition that contained bifenthrin and zeta-cypermethrin, as part of her responsibilities at FMC. Therefore, FMC was, or should have been, aware of this prior art composition, its use in field trials, and the *McKenzie* article years before FMC filed the patent applications that matured into the patents-in-suit.

Furthermore, FMC should have known that the patents-in-suit are invalid because of its decision to abandon a patent application that was related to the patents-in-suit following the affirmance of a prior art invalidity rejection by the Patent Trial and Appeal Board ("PTAB") of claims that were nearly identical to the Asserted Claims. United States Application No. 15/436,984 ("the '984 application) is a continuation of both of the patents-in-suit and is also assigned to FMC. It was filed on February 20, 2017, and has the same title as the patents-in-suit ("INSECTICIDAL AND MITICIDAL MIXTURES OF BIFENTHRIN AND CYANO-PYRETHROIDS"). By virtue of being a continuation of the patents-in-suit, the '984 application shares the same specification and the earliest claimed priority date (i.e., December 22, 2005).

During prosecution (*i.e.*, examination) of the '984 application, the patent examiner issued a final rejection of all of the claims of the '984 application on May 2, 2019, which was sent directly

---

[2] There is a LinkedIn profile for a "Cindy McKenzie, PhD", who appears to be the same individual as C.L. McKenzie. (Ex. L, LinkedIn biography of Cindy McKenzie). The biography identifies Ms. McKenize as a Research Entomologist at USDA-ARS, and lists FMC as a former employer where she worked as a "Research Biologist/Market Development" from March 1994 – December 1997 in Yuma, Arizona. (*Id.*). In this role, Ms. McKenzie was "[r]esponsible for coordinating cooperator and conducting *in-house pesticide trials* in Arizona, Nevada, and Southern California for market development of FMC products in the arid southwest. Experience with many different crops and associated pest spectrums … [and *a*]*nalyzed and interpreted results from efficacy trials* and provided data to technical support for sales representatives." (*Id.*) (emphasis added).

to FMC's in-house patent department. (Ex. M, May 2, 2019 Office Action at 1). The rejected claims were directed to insecticidal and miticidal compositions comprising bifenthrin and a cyano-pyrethroid (including zeta-cypermethrin) – the **same** ingredients as the Asserted Claims – having a ratio of from 1/99 to 99/1.  (*Id*. at 16).   The USPTO concluded that this composition was not patentable over the prior art in view of the teachings of prior art references (U.S. Publication No. 2004/0048833 ("Kohn"), U.S. Patent No. 4,997,970 ("Ager") and WO2003/053345 ("Ballard")).[3] (Ex. M). Notably, the examiner found that the prior art Kohn reference disclosed and/or taught a composition that contained zeta-cypermethrin and bifenthrin and mixtures thereof.  (Ex. M at 16-17).  As to the claimed ratio of these active ingredients, the examiner further concluded that:

> [I]t would have been obvious to one of ordinary skill in the art at the time the invention was made to create a mixture having the instantly recited 1:1 ratio. ... ***In the instant case, bifenthrin to cyano-pyrethroid were known in the art to be useful in combination for pest control. Therefore, it would have been obvious to combine these components in a 1:1 ratio towards the optimization of the process of making an insecticidal and/or miticidal composition***.

---

[3] In addition to the disclosure in *McKenzie* and the primary references used to reject the '984 application, both bifenthrin and cyano-pyrethroids (including zeta-cypermethrin) were well-known insecticidal/miticidal compounds before December 22, 2005, and the prior art suggested use of such compounds together in a single composition. (*See, e.g.*, Ex. P at [0055] ("Insecticides useful in compositions are exemplified by…pyrethroids such as cypermethrin, bifenthrin…cyfluthrin, and deltamethrin….The insecticides are used individually or as mixtures of two or more insecticides in the composition."); Ex. Q at [0834]-[0836], [0839] (disclosing that compositions of the invention may include pyrethroids such as bifenthrin and zeta-cypermethrin); Ex. R at 6:6-9 ("Preferred invertebrate pest control agents in the context of the present invention are bifenthrin, permethrin, fenvalerate, cypermethrin, deltamethrin, their isomers, and mixtures thereof, and particularly preferred is bifenthrin."); Exs. S and T at 4 (disclosing a composition containing bifenthrin and cyfluthrin and a composition containing bifenthrin and fluvalidate); Ex. U at claim 2 (disclosing compositions which comprise bifenthrin and "cyfluthrin, cyhalothrin, cypermethrin, deltamethrin, fenpropathrin, fenvalerate, flucythrinate, and fluvalinate, among other); Ex. V at 4 ("Mustang Insecticide may be applied in tank mixtures with other products approved for use on Alfalfa, Brassica Vegetables, Bulb Vegetables, Corn, Cotton, Fruiting Vegetables, Leafy Vegetables, Legume Vegetables, Pecans, Rice, Sorghum, Soybeans, Sugarbeets, and Wheat."); Ex. W at 5 ("Capture 2 EC Insecticide/Miticide may be applied in tank mixtures with other products approved for use on registered crops.").)

(*Id*. at 19) (emphasis added).

FMC appealed the examiner's findings and decision to the Patent Trial and Appeal Board ("PTAB") (Ex. N, Dec. 13, 2021 Decision on Appeal).  On December 13, 2021, the PTAB issued its decision affirming the examiner's findings that the claims of the '984 application were not patentable.  In doing so, the PTAB "adopt[ed] the Examiner's findings of fact, reasoning on scope and content of the prior art, and conclusions set out in the Final Action and Answer regarding this rejection." (*Id*. at 6.)  FMC did not file a response to this decision and the USPTO issued a Notice of Abandonment for this application on March 2, 2022 to FMC. (Ex. O, March 2, 2022 Notice of Abandonment).

As a result, FMC had notice no later than March 2, 2022, more than two years prior to filing the instant case, that the Asserted Claims, which are directed to compositions comprising the same two ingredients, *i.e.*, bifenthrin and a cyano-pyrethroid (including zeta-cypermethrin), are also invalid for the same fatal grounds raised by the USPTO in rejecting the claims of the '984 application.  This record confirms that, at a minimum, there is further a substantial question of validity of the patents-in-suit based on obviousness.

## B.    FMC Fails To Demonstrate Irreparable Harm

FMC's Motion fails to demonstrate that FMC is likely to suffer irreparable harm absent a preliminary injunction. Rather, FMC relies entirely on bare assertions and conclusory language devoid of actual evidence required to support the alleged irreparable harm. To begin with, FMC claims that a "loss of market position" will occur absent injunctive relief because FMC's HERO® product will no longer be the exclusive insecticide with a "composition of 3:1 bifenthrin:zeta-cypermethrin" on the market. (Dkt. 4 at 10). However, FMC provides no evidence showing the actual impact of this loss of exclusivity on FMC's market position—evidence necessary for such harm to be irreparable and support a preliminary injunction. *Automated Merch. Sys., Inc. v. Crane*

*Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009) (finding that "lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction."). Without any evidence demonstrating even the potential impact of Sharda's WINNER product on FMC's market position, FMC's assertion of loss of market position is simply speculative. *See LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 834 (Fed. Cir. 2020) (finding no irreparable harm because there was no evidence of loss of market share).

Moreover, FMC's claim of loss of market position based on a two-player market is unsubstantiated and misses the mark. FMC provides no basis upon which to limit the market in this case to a "composition of 3:1 bifenthrin:zeta-cypermethrin." (Dkt. 4 at 7). Indeed, FMC fails to provide any evidence regarding the scope of the relevant market, competitors, competitor products, or whether it has issued licenses for the '857 patent and '416 patent. *See SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, No. 2023-1058, 2024 WL 358136, at *4 (Fed. Cir. Jan. 31, 2024) (finding that direct competition between two providers, both offering air-to-ground ("ATG") networks that provide broadband in-flight internet connections, does not equate to a two-player market since the market may contain providers that use non-ATG technologies). Plainly put, FMC's claim of loss of market position due to the introduction of Sharda's product is purely speculative and without supporting evidence insufficient to justify the grant of a preliminary injunction.

FMC further asserts that price erosion will occur absent injunctive relief because Sharda has previously priced other competing products at a discount, offering products at "below-market or bottom-of-market prices." (Dkt. 4 at 10). But again, FMC fails to provide sufficient evidence to demonstrate the occurrence or the potential impact of the alleged price erosion—information necessary to justify the issuance of a preliminary injunction. *See SmartSky Networks*, 2024 WL

358136, at *5 (upholding districts court's rejection of price erosion argument as speculative because movant's failure to provide evidence in support of the price erosion). Indeed, FMC's own declarant concedes that FMC "has ***no way of knowing***" Sharda's pricing structure for the accused WINNER insecticide. (Dkt. 4-1 at ¶ 10 (emphasis added)).

Nor can FMC rely on Sharda's pricing structure for *another* insecticide product not covered by the patents-in-suit in the absence of any evidence that Sharda has or will offer the same reduced pricing for the accused WINNER product. Indeed, FMC offers no actual evidence to demonstrate the reduction in its pricing caused by Sharda's product as required for price erosion to occur— either now or previously to compete with Sharda's reduced prices. *See Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1343 (Fed. Cir. 2017) (upholding the district court holding that movant's evidence of price reduction was insufficient to demonstrate that price erosion was caused by the infringing products). Thus, FMC provides only a speculative claim of price erosion due to Sharda's prior discounted pricing that is insufficient to justify the grant of a preliminary injunction.

FMC also grasps at straws by attempting to show price erosion based on statements made during Sharda Cropchem Limited's fourth quarter earnings conference call held on May 14, 2024. (Dkt. 4 at 7 (citing Young Decl. at ¶ 11 & Ex. 1 at 11)). As is evident from even a cursory review of the transcript from the earning conference call, there is no basis from which to infer that Sharda announced that it plans to dump or sell-off its inventory of the WINNER product at below-market prices during the upcoming growing season:

| | |
|---|---|
| **Moderator:** | The next question is from the line of Shubham Sehgal from SIMPL. |
| **Shubham Sehgal:** | So my first question was, how the primary sales has been in Q4FY24 in our Asia market recently, North America and Europe? And what is the communication we are getting from our distributors in terms of liquidation for the upcoming season in June and September quarter? |
| **R.V. Bubna:** | Mr. Shubham, we are in touch with our markets and we are in regular and daily touch in the markets. So this is our observation and understanding of the market that the demands are picking up and the prices should be slowly start increasing. |
| **Shubham Sehgal:** | And so what about the liquidation of the inventory we're having. |
| **R.V. Bubna:** | So the inventory is getting liquidated over a period of time, and the inventory was there speak about a year back, or even more. Now the inventories are going down, both at the consumer level as well as the production level. And in the pipeline, it's a slow but continuous process. |

(Dkt. 4-1, Ex. 1 at p. 11).

FMC further asserts that loss of goodwill and reputation will occur absent injunctive relief because the price and quality differences will frustrate or confuse customers, resulting in permanent loss of customers. (Dkt. 4 at 11). But again, FMC offers no evidence to demonstrate customers frustration, confusion, or loss of customers after the introduction of Sharda's product into the marketplace.

In addition, the *Shibumi* and *Romag* cases cited by FMC are inapposite. In both cases, the courts considered the loss of goodwill and reputation from consumer confusion of aesthetically similar but lower quality counterfeit beach shade products and Romag snaps. *See Shibumi Shade, Inc., v. Beach Shade LLC*, No. 5:21-CV-256-FL, 2022 WL 390839, at *16 (E.D.N.C. Feb. 8, 2022); *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10-CV-1827 CFD, 2010 WL 4929267, at *2 (D. Conn. Nov. 30, 2010). In contrast, FMC has failed to provide evidence demonstrating the risk of consumer confusion or that Sharda's product is lower in quality so as to cause consumer

frustration. Indeed, FMC is not alleging its HERO® trademark is infringed by Sharda's use of the name WINNER or that consumers will attribute or associate FMC with Sharda's WINNER product. Further, both cases demonstrate the need to support such assertions with evidence such as consumer comments, reviews, customer confusion, and correspondences—evidence that FMC fails to provide to justify a finding of irreparable harm and issuance of a preliminary injunction.

Finally, FMC fails to demonstrate that monetary damages would be inadequate to compensate it for any alleged harms in this case. There is no support for the proposition that claims of price erosion and loss of market position constitute *per se* irreparable harm—rather such harms may be irreparable if supported by "some evidence and reasoned analysis" demonstrating the inadequacy of monetary damages. *Nutrition 21 v. United States*, 930 F.2d 867, 872 (Fed. Cir. 1991); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) (holding that equitable principles govern preliminary injunctions instead of categorical rules); *Takeda Pharms.*, 967 F.3d at 1349 (finding that moving party provided "no credible assertion that it cannot be compensated by monetary damages"). FMC fails to provide this "reasoned analysis" to demonstrate that the particular facts of this case make monetary damages inadequate to compensate FMC for the alleged price erosion and loss of market position.

Similarly, FMC fails to provide any actual analysis or support for its conclusion that the alleged loss of goodwill and reputation are irreparable because the "injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated." (Dkt. 4 at 11). Simply put, FMC's conclusory allegations without any reasoned analysis demonstrating the applicability of the cited cases is insufficient to warrant issuance of a preliminary injunction.

Thus, FMC has failed to meet its burden of establishing irreparable harm to warrant the issuance of a preliminary injunction.

### C.    The Balance Of Equities Favors The Denial Of A Preliminary Injunction

Although failure to demonstrate either likelihood of success on the merits and irreparable harm results in the denial of the preliminary injunction, the two remaining factors further weigh in favor of denying FMC's requested preliminary injunction. In evaluating the balance of equities, courts weigh the potential injury to the moving party if an injunction does not issue versus the potential injury to the non-moving party if the injunction is issued. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Essentially, the inquiry concentrates on assessing "the relative effect of granting or denying an injunction on the parties." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).

FMC advances only deficient and unsupported arguments in support of the balance of equities favoring the grant of a preliminary injunction. FMC contends that the balance of equities favors the grant of the preliminary injunction because issuance of a preliminary injunction will prevent FMC's alleged irreparable harm and Sharda assumed the risk of importing infringing products. (Dkt. 4 at 11-12). But as discussed above, the alleged irreparable harms are speculative and insufficient to warrant the issuance of a preliminary injunction. Similarly, the Asserted Claims are, at a minimum, vulnerable to invalidation and issuance of a preliminary injunction would result in FMC maintaining exclusivity over a product for which it does not have legitimate patent protection. Thus, the arguments advanced by FMC fail to demonstrate that the balance of equities favor granting a preliminary injunction.

### D.    The Public Interest Favors The Denial Of The Preliminary Injunction

The final consideration in the preliminary injunction analysis is whether the grant of a preliminary injunction favors public interest. *Celgard, LLC v. LG Chem, Ltd.*, 624 Fed. App'x 748,

752 (Fed. Cir. 2015). FMC advances a single deficient argument in support of public interest favoring the grant of a preliminary injunction. FMC contends that public interest favors the grant of a preliminary injunction because public interest favors protecting patent rights. (Dkt. 4 at 13). FMC's contention would mean that public interest always favors the grant of a preliminary injunction in patent cases. But the Federal Circuit has held that the opposite must be true and public interest weighs in favor of denying a preliminary injunction when the non-moving party raises a substantial question regarding the validity of a patent. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (finding that public interest favors denying a preliminary injunction when movant fails to establish likelihood of success on the merits). And as described above, Sharda has raised a substantial question regarding the validity of the Asserted Claims. Thus, public interest weighs in favor of denial of the preliminary injunction because Sharda has raised a substantial questing regarding the validity of the Asserted Claims.

## IV.    CONCLUSION

Sharda respectfully requests that the Court deny FMC's Motion because FMC failed to demonstrate that the preliminary injunction factors weigh in favor of granting injunctive relief.[4]

---

[4] To the extent the Court grants FMC's Motion, Sharda requests the Court to enter a briefing schedule to address the security amount payable by FMC pursuant to Fed. R. Civ. P. 65(c).

Dated:  June 20, 2024      Respectfully Submitted,

**BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP**

*/s/ Noelle B. Torrice*
Mircea Tipescu (*PHV* application pending)
Manish K. Mehta (*PHV* application pending)
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: 312.212.4949
mtipescu@beneschlaw.com
mmehta@beneschlaw.com

Michael Weinstein (*PHV* application pending)
127 Public Square, Suite 4900
Cleveland, OH 44114
Tel: 216.363.6228
mweinstein@beneschlaw.com

Noelle B. Torrice (Bar. No. 317928)
1313 North Market Street, Suite 1201  ,
Wilmington, DE 19801-6101
Tel: 302.442.7056
ntorrice@beneschlaw.com

*Attorneys for Defendant Sharda USA LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who have consented to electronic service are being served on June 20, 2024 with copies of the attached document(s) via the Court's CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Noelle B. Torrice*
Noelle B. Torrice
